# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RONELL NICHOLS, :
    Plaintiff, :
     :
v. : CIVIL ACTION NO. 19-CV-2264
     :
CORRECTIONAL OFFICER LOPPE, :
*et al.*, :
    Defendants. :

## MEMORANDUM

**LEESON, J.**                                                                                                              **JUNE 3, 2019**

       *Pro se* Plaintiff Ronell Nichols, a prisoner confined at the George W. Hill Correctional Facility, has filed a civil rights Complaint and a Motion to Proceed *In Forma Pauperis*. The Defendants are Correctional Officers Loppe, Kenneth, Starkey and Boyd, Warden David Byrne, Deputy Warden Colucci, Superintendent John A. Reilly, Jr., Grievance Coordinators Kevin Conroy and Gabrielle Price, The GEO Group, Inc., Assistant Warden James Mattera, and prison employee Sarah Bowles. Because it appears that Nichols is unable to afford to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*. For the following reasons, the Complaint will be dismissed in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.    FACTS**

       Nichols asserts that during the night of April 14, 2019, he fell off the top bunk bed in his sleep. He informed Defendant Loppe that he was injured, but Loppe allegedly told him he was playing games and to stop pushing the call button. (ECF No. 2 at 7.)[1] The next morning,

---

[1] The Court adopts the pagination assigned by the CM/ECF docketing system.

Nichols told Defendant Starkey about his fall and that his back and right hip were hurt and asked to see a nurse. (*Id.*) Starkey allegedly never called medical.

On April 17, 2019, Nichols told Defendant Kenneth about his fall. Kenneth ignored him because the officer was allegedly trying at the time to deal with Nichols's cellmate who refused to get up for inspection. (*Id.* at 8.) He alleges he went to sick call on April 18, 2019, where he explained to a nurse what happened and asked to see a doctor. (*Id.*) The nurse prescribed pain medication for two or three days. (*Id.*) Nichols was still in pain but had to continue to jump up and down from his top bunk. (*Id.*) On April 22, 2019, Nichols told Kenneth that wanted to go to medical because he was suicidal. (*Id.*) Nichols does not state what, if anything, Defendant Kenneth did in response.

On April 24, 2019, Nichols told Defendant Boyd that he had "just left medical" but his back still hurt because of the fall and asked her to call medical. (*Id.* at 7.) Boyd allegedly "got in his face" and told Nichols "not to be a bitch." (*Id.*) She also called him names when he asked for a sergeant and to file a grievance. (*Id.*) He also alleges that when he was at medical on April 24 he was seen by a nurse about his suicidal thoughts. (*Id.* at 17.) He then saw a psychiatrist. (*Id.*) He also saw a nurse on April 25 about his back and hip pain and asked to see an outside doctor because his pain medication was not working. (*Id.* at 18.) He was also seen on May 3, 2019. (*Id.*)

Nichols also alleges that, when he was committed to "Delaware County Prison,"[2] he was forced to sleep on the floor of the processing area with twenty other inmates, the area was dirty and smelled of urine, and inmates were sleeping by the toilet while other inmates used it. (*Id.* at 9.) He was then moved to a two-man cell that was being used to house three inmates, and "was

---

[2] The Court interprets this allegation to mean George W. Hill Correctional Facility.

forced to sleep in a boat for a week with two inmates [urinating] over my head." (*Id.*) He alleges this was a violation of prison regulations and that being forced to sleep next to a toilet is unconstitutional. (*Id.*) He alleges that he wrote grievances to Defendants Byrne, Colucci, and Reilly, but received no response. (*Id.* at 10.)

Nichols alleges that Defendants Loppe, Kenneth, Starkey and Boyd were deliberately indifferent to his serious medical needs and denied him medical care. (*Id.* at 11.) He claims Defendants Byrne, Colucci, Mattera, The Geo Group, Inc. and Reilly were deliberately indifferent and inflicted cruel and unusual punishment due to his having to sleep on a floor, in a boat, and in a two-man cell with three inmates. (*Id.* 11-12.) He alleges that Defendants Price and Conroy were deliberately indifferent to his serious medical needs and for "failure to correct their wrongs." (*Id.* at 12.) Finally, he alleges Defendant Bowles failed to train her officers.[3] (*Id.*)

## II. STANDARD OF REVIEW

The Court will grant Nichols leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it is frivolous or fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which

---

[3] Nichols does not allege what role Defendant Bowles plays in the prison. For the purposes of initial screening of the Complaint, the Court assumes that Bowles serves in a capacity making her responsible for the training of other employees.

[4] However, as Nichols is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Nichols is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A district court may *sua sponte* dismiss a complaint that does not comply with Rule 8 if "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quotations omitted). This Court has noted that Rule 8 "requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue." *Fabian v. St. Mary's Med. Ctr.*, No. Civ. A. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (quotations omitted).

### III. DISCUSSION

Section 1983 of Title 42 of the United States Code provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

4

### A. Claims Involving Conditions of Confinement

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). As Nichols's status during his incarceration is not clear from the Complaint, the Court will analyze his claim under both Amendments.

Pretrial detainees are protected from "punishment" by the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Because prison officials must ensure that both convicted inmates and pretrial detainees receive adequate food, clothing, shelter, and medical care, and must "'take reasonable measures to guarantee [their] safety[,]'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)), a § 1983 plaintiff asserting a conditions of confinement claim must also allege that prison officials acted with deliberate indifference to that plaintiff's health or safety. *See Wilson v. Seiter*, 501 U.S. 295, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer*, 511 U.S. at 837). Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson*, 501 U.S. at 298; *Bell*, 441 U.S. at 538-39, 539 n.20).

To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement."). Such necessities include food, clothing, shelter, medical care and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). A prisoner must also establish that the defendants acted with deliberate indifference. *Farmer*, 511 U.S. at 835.

Nichols's conditions of confinement claim is based on his allegation that he was housed in the intake area where he had to sleep on a floor, "on a boat," near a toilet, and was later assigned to a cell with two other inmates. Nichols has not alleged a plausible constitutional violation because he has not alleged that the overcrowded conditions deprived him of a basic need, or otherwise caused him harm. Nor do the conditions he describes, while far from ideal, constitute an objectively serious deprivation or punishment. Housing multiple inmates in a cell does not alone establish a constitutional violation. *See, e.g., North v. White*, 152 F. App'x 111, 113 (3d Cir. 2005) (per curiam) ("Double or triple-bunking of cells, alone, is not per se unconstitutional."); *Wilson v. Seiter*, 501 U.S. 294, 305 (1991) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."); *Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (per curiam) ("The critical issue for Eighth Amendment purposes is not the number of prisoners who share facilities; rather, it is whether the alleged overcrowding has somehow harmed the prisoner."); *Hubbard v. Taylor*, 538 F.3d 229, 232-35 (3d Cir. 2008) (triple-celling of

6

pretrial detainees, some of whom were made to sleep on floor mattresses for three to seven months, and housing of detainees in gym, weight room, and receiving area due to overcrowding, did not amount to punishment); *Walker v. George W. Hill Corr. Facility*, Civ. A. No. 18-2724, 2018 WL 3430678, at *3 (E.D. Pa. July 13, 2018) (concluding that prisoner plaintiff's claims that "he was forced to share a cell with two other individuals and that he was forced to sleep on the floor inside what was described as a boat unit" and that "his sleeping area was a very unhealthy and unsanitary space two feet from the toilet bowl" failed to state a Fourteenth Amendment claim with respect to allegations of overcrowding). Thus, Nichols's Complaint fails to state a claim against Defendants Byrne, Colucci, Reilly, Mattera and The Geo Group, Inc. with respect to his allegations of overcrowding at this time. However, because Nichols may be able to cure the defects the Court has noted, he will be permitted an opportunity to file an amended complaint.[5]

### B. Claims Involving Grievances

Nichols alleges that he wrote grievances to Defendants Byrne, Colucci, and Reilly, about prison conditions but received no response. His claims based on the handling of his grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, the facts

---

[5] Should he choose to continue the action by filing an amended complaint, Nichols should take care to comply with Rule 8 by providing enough information to put each Defendant he names therein on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue.

7

alleged by Nichols about grievances do not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice.[6]

### C. Deliberate Indifference Claims Involving Medical Needs

Nichols asserts that Defendants Loppe, Kenneth, Starkey and Boyd were deliberately indifferent to his serious medical needs and denied him medical care because they did not respond appropriately after he reported his injury to them. Although he also asserts Defendants Price and Conroy were also deliberately indifferent, Nichols alleges no facts to demonstrate that Price and Conroy took any act that caused him harm or were even aware of his medical issues. "Where prison officials know of the prisoner's serious medical need, deliberate indifference will be found where the official '(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Bearam v. Wigen*, 542 F. App'x 91, 92 (3d Cir. 2013) (per curiam) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)); *see also Montgomery v. Aparatis Dist. Co.*, 607 F. App'x 184, 187 (3d Cir. 2015) (per curiam) ("Delay or denial of medical care violates the Eighth Amendment where defendants are deliberately indifferent to a prisoner's serious medical need."). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

---

[6] Although Nichols does not mention Defendants Conroy and Price in this section of his Complaint he identifies them as prison "grievance coordinators." The grievance claim is dismissed against Conroy and Price to the extent that the claim is asserted against them for the same reason.

8

Nichols's deliberate indifference allegations are not plausible because they do not meet this standard. Liberally construed, his contentions appear to be that the correctional officer Defendants did not take him seriously or ignored his complaints of being injured in the fall and his suicidal ideation causing a delay in treatment. However, Nichols also concedes that he received medical and psychiatric treatment after his fall and after he informed officials of his mental health issue. The delay Nichols experienced between the time he alerted officials and when actually received medical attention — three days in the case of his fall and two days in the case of his mental health issue — does not allege a plausible deliberate indifference claim because Nichols does contend that the delay was due to a non-medical reason. He also fails to allege facts that would establish that his need for more immediate medical attention was so obvious that the delay he experienced constituted a deliberate indifference. Accordingly, these claims will be dismissed pursuant to § 1915 without prejudice and with leave granted to Nichols to attempt to amend his Complaint to cure these defects.

### D. Failure to Train Claim

Nichols alleges that Defendant Bowles failed to train her officers. (ECF No. 2 at 12.) Other than listing Bowles's names in the caption of the Complaint, Nichols does not make any other allegation concerning her. The conclusory allegation that Bowles failed to train her officers is insufficient to state a plausible claim. "Under Section 1983, a supervisor may be liable for her failure to train or supervise her employees. . . ." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). To state a claim under § 1983 for failure to train, a complaint must allege that the supervisor's failure to train her employees amounts to "'deliberate indifference to the rights of persons with whom the [untrained employees] c[a]me into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (first alteration in original) (quoting *City of*

*Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). Although Nichols is proceeding *pro se*, and the Court accordingly construes his allegations liberally, since he fails to allege any arguable basis in law or fact regarding Bowles, the Complaint will be dismissed without prejudice as to Bowles and the Court will grant Nichols leave to amend to attempt to cure this defect.

IV. **CONCLUSION**

For the foregoing reasons, the Court will grant Nichols leave to proceed *in forma pauperis* and dismiss his Complaint. Nichols is granted leave to file an amended complaint in accordance with the Court's Order accompanying this Memorandum in the event he can cure the defects in his claims. An appropriate Order follows.

                                          **BY THE COURT:**

                                          */s/ Joseph F. Leeson, Jr.*
                                          **JOSEPH F. LEESON, JR., J.**